**NOT FOR PUBLICATION**

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARIJAN CVJETICANIN,<br><br>             Petitioner,<br><br>        v.<br><br>UNITED STATES OF AMERICA,<br><br>             Respondent. | Civil Action No. 19-549 (MAS)<br><br>**OPINION** |

**SHIPP, District Judge**

This matter comes before the Court on Petitioner Marijan Cvjeticanin's amended motion to vacate sentence brought pursuant to 28 U.S.C. § 2255. (ECF No. 22.) Following an order to answer, the Government filed a response to the amended motion (ECF No. 25), to which Petitioner replied. (ECF No. 27.) For the following reasons, this Court will deny the amended motion, and will deny Petitioner a certificate of appealability.

## I.    BACKGROUND

Petitioner's mail fraud convictions arise out of actions he took while working as an attorney at the firm of Wildes & Weinberg, P.C., between 2010 and 2012 on behalf of two corporate clients – Automatic Data Processing, Inc. ("ADP"), and Broadridge Financial Solutions, Inc. ("Broadridge"). (Gov't App. at A125-27, 664.)[1] At trial, Petitioner's former employer, Steven

---

[1] As the Government's Appendix, filed on the docket of this matter as documents 3-7 attached to ECF No. 25, contains all of the relevant transcripts of this matter formatted under a single and consistent system of page numbers, this Court will cite to that appendix for citations to the trial record of this matter.

Weinberg, as well as several government agents and employees of ADP and Broadridge, testified that, while employed at the firm, Petitioner engaged in a scheme to defraud ADP and Broadridge out of a considerable amount of money by purporting to place advertisements on the companies' behalf related to employee immigration applications, accepting payments for these advertisements, and then failing to ever place the advertisements in question. (*See id.* at A1-720.)

The evidence submitted at trial indicated that, while employed at the law firm, Petitioner was tasked with preparing permanent labor certification applications, which are used to acquire permanent immigration status on behalf of employees where qualified American applicants are unavailable, for ADP and Broadridge which were filed with the United States Department of Labor ("DOL"). (*Id.* at A116-117, 126-37.) As part of this process, the companies were required to submit proof that qualified American workers were unavailable in the form of evidence that several public newspaper advertisements had been placed which did not result in any qualified applicants. (*Id.* at A116-32.) While at the firm, one of Petitioner's duties included actually placing the advertisements and filing the DOL applications which contained the dates and locations of those advertisements. (*Id.*) Prior to 2010, Petitioner convinced the firm to cease using its former advertisement agency and to make use of a new entity – Flowerson Advertising ("Flowerson")– to place these ads. (*Id.* at A10, 125-30.) Plaintiff did not disclose, however, that he was the actual owner and operator of the Flowerson agency, making use of his wife's maiden name and a pseudonym to obscure this fact. (*Id.* at A130-31, 141-43, 219, 285-94, 368-69, 379, 387, 444-45, 462-67, 495-507, 539-43.)

Acting as both attorney and advertising agent, Petitioner, between 2010 and 2012, began to prepare DOL applications in which he asserted that certain advertisements had been placed, and billed ADP and Broadridge for those advertisements, without ever placing the advertisements in question. (*Id.* at A203, 206, 144-216, 221, 267, 387-91, 389-407.) Following the discovery of

2

these actions by Weinberg in late 2012, Weinberg acquired copies of the relevant periodicals, including Computer World magazine and a number of newspapers, and discovered that the vast majority of the advertisements had never been placed at all, and that some which Petitioner had claimed to have placed were actually only placed *after* the DOL sought to audit the filed labor certifications and sought proof of advertisement. (*Id.* at A156-90, 389-407.) In those instances, Petitioner would secure an advertisement, and then doctor the advertisement to make it look as if it had been placed on the date on which he originally claimed to advertise the underlying position. (*Id.* at A156-90, 209-10, 389-407.) A review of these same papers by Government agents likewise confirmed that in many instances, Petitioner billed ADP and Broadridge for advertisements that were not placed or which were placed after the fact and altered to appear as if timely submitted. (*Id.* at A149-90, 209-10, 229-30, 264-655, 389-408.) A search of Petitioner's home likewise resulted in the recovery of several of these doctored advertisements. (*Id.* at A383-408.)

As part of his investigation into Petitioner's actions following the discovery of Petitioner's ownership of Flowerson, Weinberg called Petitioner into a meeting which Weinberg recorded and which was played for the jury at trial. (*See id.* at A752-817.) During this meeting, Petitioner admitted to owning Flowerson and that he billed ADP and Broadridge for advertisements that were never placed, although he contended that at least some of these advertisements (specifically those placed in Computer World) were known by the client companies to have never been placed, a claim unsubstantiated by any other evidence in the record and directly contradicted by the testimony of the relevant employees of ADP and Broadridge. (*Id.* at A447-48, 462-72, 483-84, 496-513, 529, 532-34, 752-817.) During this exchange, Petitioner also refused to express any remorse at his actions, claimed to have been proud of what he accomplished, asserted that the clients had gotten value from his actions, and made various vague threats suggesting that if the matter were not swept under the rug, he would take actions which would make things difficult for

3

his former firm, ADP, and Broadridge, including contacting immigration officials. (*Id.* at A752-817.)

A jury convicted Petitioner of all nine mail fraud charges. (*Id.* at A711, 718-19.) This Court thereafter sentenced Petitioner to 57 months' imprisonment, a supervised release term, a forfeiture of $668,977, and a restitution order of $1.2 million. (*Id.* at A891;, Docket No. 14-274 at ECF Nos. 105-06, 119.) Petitioner thereafter filed a number of post-trial motions, which this Court denied. *See United States v. Cvjeticanin*, No. 14-274, 2019 WL 1059991 (D.N.J. Mar. 6, 2019). Petitioner appealed both his conviction and the denial of these motions, but the Third Circuit affirmed in all respects. *See United States v. Cvjeticanin*, 704 F. App'x 89 (3d Cir. 2017); *United States v. Cvjeticanin*, 795 F. App'x 873 (3d Cir. 2019), *cert. denied*, 141 S. Ct. 121 (2020). Petitioner timely filed his initial § 2255 motion in this matter in January 2019. (ECF No. 1.) Following motion practice, Petitioner filed his current amended motion to vacate sentence on July 1, 2021. (ECF No. 22.)

## II.   <u>LEGAL STANDARD</u>

A prisoner in federal custody may file a motion pursuant to 28 U.S.C. § 2255 challenging the validity of his or her sentence. Section 2255 provides, in relevant part, as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255. Unless the moving party claims a jurisdictional defect or a constitutional violation, to be entitled to relief the moving party must show that an error of law or fact constitutes "a fundamental defect which inherently results in a complete miscarriage of justice, [or] an

omission inconsistent with the rudimentary demands of fair procedure." *United States v. Horsley*, 599 F.2d 1265, 1268 (3d Cir. 1979) (quoting *Hill v. United States,* 368 U.S. 424, 429 (1962)), *cert. denied* 444 U.S. 865 (1979); *see also Morelli v. United States*, 285 F. Supp. 2d 454, 458-59 (D.N.J. 2003).

## III.   DISCUSSION

### A.   No Evidentiary Hearing Is Necessary In This Matter

A district court need not hold an evidentary hearing on a motion to vacate where "the motion and files and records of the case conclusively show that the prisoner is entitled to no relief." 28 U.S.C. § 2255(b); *United States v. Booth*, 432 F.3d 542, 545-56 (3d Cir. 2005); *United States v. Day*, 969 F.2d 39, 41-42 (3d Cir. 1992).   "Where the record, supplemented by the trial judge's personal knowledge, conclusively negates the factual predicates asserted by the petitioner or indicate[s] that petitioner is not entitled to relief as a matter of law, no hearing is required." *Judge v. United States*, 119 F. Supp. 3d 270, 280 (D.N.J. 2015); *see also Gov't of V.I. v. Nicholas*, 759 F.2d 1073, 1075 (3d Cir. 1985); *see also United States v. Tuyen Quang Pham*, 587 F. App'x 6, 8 (3d Cir. 2014); *Booth*, 432 F.3d at 546.   Because Petitioner's claims are either barred or without merit for the reasons expressed below, no evidentiary hearing is necessary in this matter.

### B.   Petitioner may not relitigate claims which were previously raised

In his amended motion to vacate sentence, Petitioner raises several claims which were raised, and rejected, in his post-trial motions and in his direct appeal.   A § 2255 motion "is not a substitute for an appeal" and therefore cannot "be used to relitigate matters decided adversely on appeal." *Nicholas*, 759 F.2d at 1075; *see also United States v. Frady*, 456 U.S. 152, 165 (1982) (a § 2255 motion "may not do service for an appeal"); *United States v. Orejuela*, 639 F.2d 1055, 1057 (3d Cir. 1981)).   As such, § 2255 "may not be employed to relitigate questions which were raised and considered on direct appeal" or in post-trial motions before the district court.   *United*

*States v. DeRewal*, 10 F.3d 100, 105 n. 4 (3d Cir. 1993) (quoting *Barton v. United States*, 791 F.2d 265, 267 (2d Cir. 1986); *see also United States v. Travillion*, 759 F.3d 281, 288 (3d Cir. 2014) (issues resolved in a prior direct appeal will not be reviewed again by way of § 2255 motion).

In his first claim, Petitioner contends that he is actually innocent of his mail fraud charges. This claim, however, is simply a repackaged version of the "new evidence" claim he raised before this Court in a motion seeking a new trial and before the Third Circuit on direct appeal. The Third Circuit rejected these claims, finding that the proposed "new evidence" did not prove the points Petitioner contended that they did, and that in any event, Petitioner's claims were insufficient to overcome the strong evidence of guilt provided at trial including "the inculpatory, recorded statements made by [Petitioner] to Steven Weinberg." *Cvjeticanin*, 795 F. App'x at 877. As Plaintiff's arguments were previously raised on appeal, they may not be reraised here. *DeRewal*, 10 F.3d at 105, 105 n. 4. Even were this not the case, as both this Court and the Third Circuit noted in deciding Petitioner's post-trial motions and direct appeal, the "new evidence" Petitioner seeks to provide is not sufficient to show that no reasonable jury could have convicted him had the evidence in question been presented at trial, and he would not be entitled to relief in any event. *See, e.g.*, *McQuiggin v. Perkins*, 569 U.S. 383, 399 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 327 (1995)) (showing of actual innocence requires that the petitioner present new, credible evidence sufficient to show "that it is more likely than not that no reasonable juror would have convicted him"). Because the evidence of Petitioner's guilt – including his inculpatory statement to Weinberg and the direct evidence that the ads he was supposed to place were either never placed or were placed long after the fact and then doctored – was strong, and his proposed "new evidence" in no way undercuts that evidence, Petitioner has failed to show he is actually innocent of mail fraud, and his claim fails even were it not barred.

In his next series of claims (claims three through six) in his motion, Petitioner contends that the Government engaged in misconduct by "hiding" evidence during jury deliberations, failing to turn over information about a prior arrest as to a government agent who testified at trial, committed other alleged *Brady* violations, and suborned perjury in permitting Weinberg to testify that he had retrieved copies of all the newspapers involved and found that Petitioner had falsely claimed to have placed ads that never existed. Petitioner presented these same arguments in his post-trial motions and appeals, and both this Court and the Third Circuit rejected these claims, finding that the alleged "evidence" on which Petitioner relies was insufficient to warrant a new trial as it was insufficient to counteract the significant evidence of Petitioner's guilt presented at trial. *Cvjeticanin*, 795 F. App'x at 875-78, 877 n. 4. Petitioner may therefore not relitigate them here. *DeRewal*, 10 F.3d at 105, 105 n. 4.

### C.     Petitioner's jurisdiction and remaining prosecutorial misconduct claims are procedurally defaulted and without merit

In his next set of claims (claims number 2, 7, 8, and 9) Petitioner contends that the Government failed to prove the use of the mails element of the mail fraud statute, and that the Government committed misconduct in threatening to prosecute his wife, abusing the grand jury, and selectively prosecuting Petitioner based on his nationality. None of these claims were previously raised before this Court or on direct appeal. Because "[h]abeas review is an extraordinary remedy and 'will not be allowed to do service for an appeal[,]'" *Bousley v. United States*, 523 U.S. 614, 621 (1998) (quoting *Reed v. Farley*, 512 U.S. 339, 354 (1994)); *Sunal v. Large*, 332 U.S. 174, 178 (1947)), any claim which could have been, but was not, raised on direct appeal is considered procedurally defaulted for the purposes of a § 2255 motion. *See Massaro v. United States*, 538 U.S. 500, 504 (2003); *Frady*, 456 U.S. at 167-68; *see also Parkin v. United States*, 565 F. App'x 149, 151-52 (3d Cir. 2014). A Petitioner may not receive relief on a defaulted

claim unless he shows cause and actual prejudice sufficient to overcome the procedural bar. *Parkin*, 565 F. App'x at 151-52. Cause in this context requires that "'some objective factor external to the defense impeded counsel's efforts' to raise the claim." *Id.* at 151 (quoting *United States v. Pelullo*, 399 F.3d 197, 223 (3d Cir. 2005)). Even where he shows cause, a petitioner will still not be entitled to relief unless he shows actual prejudice, *i.e.*, that the alleged errors "worked to his actual and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170.

As Petitioner's jurisdictional and remaining misconduct claims could have been, but were not, raised on direct appeal, they have been defaulted, and Petitioner has failed to show that he has suffered actual prejudice sufficient to evade the procedural default bar.[2] As to his jurisdictional claim, Petitioner contends that the Government failed to prove that he used the mail in perpetuating his fraud. Contrary to Petitioner's assertions, however, the evidence in the record, including the testimony of four separate witnesses, indicates that Petitioner submitted his fraudulent invoices

---

[2] Petitioner contends in his amended motion that his three misconduct claims amount to "structural" errors for which prejudice is usually presumed. Very few types of error are considered structural, however. *See, e.g., Arizona v. Fulminante*, 499 U.S. 279, 309-10 (1991) (canvassing cases and delineating the scenarios in which structural errors have been recognized). Nothing Petitioner has submitted leads this Court to conclude that any of the alleged errrors are truly structural – at best, Petitioner contends prosecutorial misconduct, not the complete denial of a fundamental right. In any event, that an error is structural, only governs whether the error in question is entitled to a presumption of prejudice, it does not affect the procedural limitations applicable to habeas proceedings, such as the relevant statute of limitations, or procedural bars on the raising of successive or defaulted claims. *See Johnson v. Pinchak*, 392 F.3d 551, 566 n.6 (3d Cir. 2004) (rejecting a claim as procedurally defaulted while explicit declining to determine whether the claim in question was structural); *Dedona v. United States*, No. 08-2046, 2009 WL 2778386, at *4-5 (D.N.J. Aug. 31, 2009) (rejecting argument that structural errors could proceed regardless of timeliness and finding motion alleging structural errors time barred); *see also Montes v. Nash*, 179 F. App'x 824, 825 (3d Cir. 2006) (inability to raise a structural error claim which is procedurally barred under § 2255 insufficient to permit a petitioner to evade the second or successive motion bar). In the absence of any clear caselaw indicating that alleged structural errors are immune to the procedural default bar, Petitioner's contention in no way entitles him to a full consideration of his defaulted claims, especially in light of Third Circuit caselaw suggesting that even potentially structural claims are subject to the default bar. *Johnson*, 392 F. 3d at 566 n. 6.

through the mail to ADP and Broadridge, in some cases being sent directly to a post-office box. There was therefore ample evidence to support the jury's finding of guilt through the use of the mail, and Petitioner's "jurisdictional" claim is without merit.

In the three remaining claims of prosecutorial misconduct, Petitioner contends that the Government harassed him and his family by sending a letter informing his wife that she could be subject to criminal charges, by subpoenaing his daughter's school records, and by prosecuting him based on his nationality.  As to the first two issues, Petitioner has utterly failed to show any prejudice resulting either from the Government informing Petitioner's wife that she could be charged or from obtaining his daughter's school records which may well have been relevant to the Government's efforts to track Petitioner's finances, nor has he provided any caselaw to support his contention that these actions were in any way so improper as to require habeas relief.  Likewise, Petitioner's claim of selective prosecution is based on an entirely faulty premise – Petitioner contends that many American born white individuals were involved in the filing of certifications with the Department of Labor, and only he, a European immigrant was charged with a crime. (Pet'r's Am. Mot. to Vacate, ECF No. 22 at 32.)  The problem with this vast oversimplification is obvious – Petitioner obscured his ownership of Flowerson and used that agency to charge *his* clients for advertisements which were never placed.  The reason Petitioner was the only individual prosecuted is obvious – he is the only person he has identified who was directly involved in criminal conduct, and Petitioner has in no way provided anything to even suggest selective prosecution other than his own indignation.  *See, e.g.*, *Hill v. City of Scranton*, 411 F.3d 118, 125 (3d Cir. 2005) (selective prosecution occurs when a person is treated differently, such as by being prosecuted, by other similarly situated persons on an improper basis such as nationality).  As Petitioner has failed to show cause or actual prejudice sufficient to excuse his default of any of these claims, and as each claim is otherwise lacking in merit, they are denied.

### D.      Petitioner's ineffective assistance of counsel claims

In the bulk of his claims, Petitioner claims that his trial and appellate counsel were constitutionally deficient.[3] The standard applicable to such claims is well established:

> [c]laims of ineffective assistance are governed by the two-prong test set forth in the Supreme Court's opinion in *Strickland v. Washington*, 466 U.S. 668 (1984). To make out such a claim under *Strickland*, a petitioner must first show that "counsel's performance was deficient. This requires [the petitioner to show] that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id.* at 687; *see also United States v. Shedrick*, 493 F.3d 292, 299 (3d Cir. 2007). To succeed on an ineffective assistance claim, a petitioner must also show that counsel's allegedly deficient performance prejudiced his defense such that the petitioner was "deprive[d] of a fair trial . . . whose result is reliable." *Strickland*, 466 U.S. at 687; *Shedrick*, 493 F.3d at 299.
>
> In evaluating whether counsel was deficient, the "proper standard for attorney performance is that of 'reasonably effective assistance.'" *Jacobs v. Horn*, 395 F.3d 92, 102 (3d Cir. 2005). A petitioner asserting ineffective assistance must therefore show that counsel's representation "fell below an objective standard of reasonableness" under the circumstances. *Id.* The reasonableness of counsel's representation must be determined based on the particular facts of a petitioner's case, viewed as of the time of the challenged conduct of counsel. *Id.* In scrutinizing counsel's performance, courts "must be highly deferential . . . a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.
>
> Even where a petitioner is able to show that counsel's representation was deficient, he must still affirmatively demonstrate that counsel's deficient performance prejudiced the petitioner's defense. *Id.* at 692-93. "It is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding." *Id.* at 693. The petitioner must demonstrate that "there is a reasonable probability, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable

---

[3] In addition to the claims discussed in this opinion, in his Amended Petition Petitioner sought to raise a claim (claim 65) suggesting that his trial counsel had colluded against him with his former employer, which the Government argued was time barred. In his reply brief, however, Petitioner voluntarily withdrew that claim. (*See* ECF No. 27 at 9.)

> probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694; *see also Shedrick*, 493 F.3d at 299. Where a "petition contains no factual matter regarding *Strickland's* prejudice prong, and [only provides] . . . unadorned legal conclusion[s] . . . without supporting factual allegations," that petition is insufficient to warrant an evidentiary hearing, and the petitioner has not shown his entitlement to habeas relief. *See Palmer v. Hendricks*, 592 F.3d 386, 395 (3d Cir. 2010). "Because failure to satisfy either prong defeats an ineffective assistance claim, and because it is preferable to avoid passing judgment on counsel's performance when possible, [*Strickland*, 466 U.S. at 697-98]," courts should address the prejudice prong first where it is dispositive of a petitioner's claims. *United States v. Cross*, 308 F.3d 308, 315 (3d Cir. 2002).

*Judge v. United States*, 119 F. Supp. 3d 270, 280-81 (D.N.J. 2015).

Turning first to Petitioner's claims 22 and 29, Petitioner attempts to relitigate claims which this Court and the Court of Appeals rejected by repackaging them as claims of ineffective assistance of counsel – specifically his claims that various advertisements he alleges he provided to the Government were suppressed, that the chain of custody as to certain evidence was allegedly broken, and that counsel failed to ensure "key" evidence was not removed from the courtroom. As the Third Circuit found on appeal, each of the assertions underlying these claims, discussed briefly above, are either incorrect or severely misleading – there was no true "break" in the chain of custody of any exculpatory evidence, the allegedly suppressed evidence was not of the sort which would have altered the outcome of trial, and there was no "removal" of key evidence – merely a mistaken belief as to the location of certain documents by all parties during jury deliberations which this Court addressed. *See, e.g., Cvjeticanin*, 795 F. App'x at 877; *Cvjeticanin*, 704 F. App'x at 91-92. As the claims, motions, or arguments Petitioner wishes counsel had raised are thus without merit, he was not prejudiced by counsel's failure to raise those arguments. *Werts v. Vaughn*, 228 F.3d 178, 203 (3d Cir. 2000) (citing *Commonwealth v. Carpenter*, 725 A.2d 154, 161 (Pa. 1999)) (counsel cannot be ineffective in failing to raise a meritless argument); *see also*

*United States v. Aldea*, 450 F. App'x 151, 152 (3d Cir. 2011) (citing *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996)) (same).

In a related claim, claim number 10, Petitioner alleges that trial counsel lied to the Court, both concerning the misplaced evidence during the jury deliberations, which all parties believed was present in the courtroom, and in arguing to the Third Circuit that it should consider his financial situation in reconsidering this Court's restitution order. Neither claim actually involves a lie on counsel's part – counsel believed the evidence in question was in the room, as did all involved, and the issue was quickly addressed thereafter, and the argument on appeal that Petitioner was unable to pay the restitution order this Court entered was a fair argument that in no way prejudiced Petitioner. Petitioner has failed to show that counsel actually lied to this Court or the Court of Appeals, nor that he was in any way prejudiced, and this claim fails to state a basis for habeas relief. *Palmer*, 592 F.3d at 394-95.

In his next series of claims (claims 11, 12, 13, 14, 18, 19, 26, and 27), Petitioner argues that counsel repeatedly presented "frivolous" arguments (latching his hopes to a single comment by the Court of Appeals),[4] failed to fully investigate the case, failed to properly research legal issues involved at trial, failed to properly cross examine witnesses, failed to present a theory of defense to the jury, and failed to identify and challenge alleged perjury. Having reviewed the record of counsel's pretrial actions and counsel's behavior during trial, it is clear that each of these claims is without merit. Throughout trial, before, and after, counsel was prepared, knowledgeable, and made reasonable – if sometimes unsuccessful – legal arguments. Counsel's conduct clearly evinced proper preparation and investigation into Petitioner's case, and Petitioner has utterly failed to show any evidence counsel could have discovered that actually would have in any way affected

---

[4] Petitioner's claims regarding counsel's appellate failings are addressed below.

the outcome of his trial in light of the strong evidence of his guilt – his own admissions and the clear documentary evidence showing that no advertisements had been properly placed chief among them. Contrary to Petitioner's arguments, counsel did forcefully cross examine the witnesses, did challenge the Government's evidence and testimony, and thus did defend Petitioner throughout his trial. Likewise, although Petitioner argues that there were many "perjuries" at trial, he presents nothing other than his own belief to that extent – there is no credible evidence in the record to support the perjury arguments nor any evidence that raising the perjury challenges Petitioner wishes had been made would have been of any positive effect at or after trial. Petitioner has thus failed in each of these claims to show that counsel was deficient or that he was in any way prejudiced by counsel's alleged failures, and each of these claims is therefore insufficient to warrant habeas relief.

In his claims number 15 and 45, Petitioner contends that counsel proved ineffective in failing to call any fact or expert witnesses in his defense rather than rest on putting the Government to its proofs. Specifically, he asserts that counsel should have called a number of expert witnesses he believes could have aided his cause had counsel located a willing expert, and a number of fact witnesses, most of whom could have provided testimony that was ancillary to the key issues at trial at best. Most of the testimony he wishes had been sought is of, at best, of only limited relevance, and Petitioner in any event has utterly failed to provide any signed affidavits or evidence to support his assertion that any of the witnesses he raises would have provided the testimony he now asserts would have been available. He has likewise failed to provide the name of any willing expert or sworn statement containing any proposed expert testimony This failing is absolutely fatal to Petitioner's ineffective assistance of counsel claim. *See, e.g., Tolentino v. United States*, No. 13-4168, 2014 WL 3844807, at *3 (D.N.J. July 31, 2014) ("[a petitioner's] failure to include a sworn statement regarding the nature of [a witness's] proposed testimony is fatal to his making

a *prima facie* showing of prejudice"); *see also Duncan v. Morton*, 256 F.3d 189, 201-02 (3d Cir. 2001).   As Petitioner has failed to provide sworn statements from the witnesses as to what testimony they would have provided, and has provided no more than his own conjecture as to their alleged value as witnesses, he has failed to show that he was prejudiced by this alleged failing.

In his next claim (claim 16), Petitioner contends that trial counsel "tricked" him into not testifying, allegedly by telling him that her investigator would testify or that co-counsel would introduce new evidence during his summation.   Petitioner's claim, however, is directly contradicted by the events which occurred at the conclusion of his trial.   At trial, shortly after counsel made it clear that no further witnesses were to be called and agreed on the final pieces of evidence to be admitted (*see* Gov't's App. at A547-53), this Court conducted a colloquy with Petitioner as to his decision of whether he wished to testify in his own defense.   During that colloquy, this Court informed Petitioner that the right to testify was his and his alone, and that he, and not counsel, was "the only person with the authority to waive it."   (*Id.* at A553-54.)   Petitioner confirmed that he had discussed the issue with counsel, had no further questions or concerns, and that he knowingly and voluntarily wished to waive his right to testify in his own defense.   (*Id.*)   This colloquy, conducted only after it was made abundantly clear that the only evidence the defense wished to submit was an agreed upon stipulation and that no other witnesses or pieces of evidence would be submitted by the defense, directly contradicts Petitioner's claim and shows that Petitioner, and not counsel, made the decision not to testify, knowing full well that no witnesses – such as the investigator – or further evidentiary documents would be submitted.   There is nothing in the record to show that counsel "tricked" Petitioner into not testifying, and the record instead shows that Petitioner made a knowing and voluntary waiver of his right to testify.   That he now wishes he had made a different decision is no basis for habeas relief.   *See, e.g., United States v. William*, No. 08-389, 2010 WL 5811356, at *9 (E.D. Pa. Nov. 29, 2010) (counsel is not ineffective

in advising a Petitioner as to his right to testify where it is clear he was aware of and understood his right to testify and knowingly chose not to testify).

In his claim 17, Petitioner contends that one of his trial attorneys made "an unauthorized . . . admission of [his] guilt" during closing arguments.  Petitioner's claim, however, mischaracterizes the statements which counsel made during summations.  While Petitioner characterizes counsel as having admitted that he committed the fraud in question by "fudging" things, what counsel actually attempted to argue was that people "in busy environments, sometimes . . . fudge things that they shouldn't" and that while this may amount to a mistake, it does not mean they "intended to commit fraud." (*See* Gov't's App. at A701.)  Counsel did not say that Petitioner specifically "fudged" anything, nor did he admit to the charged fraud, instead he presented a logical, if unsuccessful, argument to undercut the Government's proofs in support of the fraud charges – that at least some of the failed advertisements were the result of mistakes rather than purposeful fraud.  There was no improper admission of guilt, and, in light of the evidence at trial, Petitioner has not shown that he was prejudiced by counsel's argument.  Petitioner has thus failed to show ineffective assistance of counsel on this basis.  *See Palmer*, 592 F.3d at 394.

In his next claim, claim 20, Petitioner asserts that his trial counsel were ineffective because they were subject to a conflict of interest due to high caseloads, as evinced by counsel's alleged failure to provide the Third Circuit with time for oral argument.  Although Petitioner asserts that he believes that counsel had a conflict, in fact this is a simple repackaging of his claim that counsel was improperly prepared both at trial and on direct appeal.  Putting aside the fact that both counsel dispute Petitioner's claims and argue that they were not so overwhelmingly busy as Petitioner claims – with no proof but his own word, Petitioner has utterly failed to show that he was prejudiced.  As this Court noted above, counsel were well prepared throughout Petitioner's trial proceedings, and nothing Petitioner has presented in any way demonstrates an actual conflict of

interest or that counsel were too busy to adequately prepare. Indeed, Petitioner's chief assertion –
that counsel was too busy to appear for oral argument on appeal – is patently false. No argument
was ever requested by the panel, and by all appearances counsel did provide her availability for
argument had the appellate court so desired. (*See* Decl. of Lorraine Gauli-Rufo, ECF No. 25-1 at
6.) As Petitioner has not shown that he was prejudiced by the alleged "conflict" of interest arising
from counsels' busy schedule, his claim of ineffective assistance fails. *Palmer*, 592 F.3d at 395.

In his next claim (number 21), Petitioner argues that counsel proved ineffective in failing
to obtain *Jencks* material in the form of reports regarding interviews of personnel at Broadridge
who testified at trial. Petitioner, however, makes no effort to show *how* requesting and receiving
the *Jencks* statements would have in any way affected the outcome of his trial. He has therefore
utterly failed to show that he was prejudiced by counsel's alleged failure, and has shown no basis
for habeas relief. *See, e.g., United States v. Heilman*, 377 F. App'x 157, 197 (3d Cir. 2010)
(prejudice as to failure to request *Jencks* material requires showing of how the material would have
affected the outcome of proceedings).

In his next series of claims (numbered 23-25, 28, 30-41), Petitioner argues that counsel
should have filed a number of motions or objections including a motion seeking the dismissal of
his charges on the basis of alleged illegal wiretaps Petitioner suspects must have existed; a motion
seeking the dismissal of his charges as trial was to start just after the filing of the most recent
superseding indictment; a motion or objection to the lack of a new arraignment hearing after the
filing of that superseding indictment, a motion seeking to have Agent Patel sequestered during
trial; a motion seeking a hearing as to alleged jury tampering that Petitioner *presumes* must have
occurred without providing any actual evidence of tampering; an objection to certain jury
questions being read while Petitioner was out of the courtroom at lunch, a motion for a bill of
particulars; a motion seeking the identity of unknown informants Petitioner believes may have

existed; a better motion for a change of venue than that which was previously filed; a motion to dismiss the indictment due to legal insufficiency, factual insufficiency, duplicity, or multiplicity; a motion seeking to inspect grand jury testimony for possible *Jencks* material; a motion to dismiss based on Petitioner's belief that certain testimony before the grand jury amounted to material misstatements despite being based in the evidence subsequently submitted at trial; and a motion seeking to challenge the identity and fitness of grand jurors based on Petitioner's assumption that there must have been a problem with them.  In each of these claims, Petitioner provides little more than his own bald assertions and assumptions in support of his contention that any valid basis for a motion or objection actually existed, and in none of these claims does he actually set forth a valid argument as to the merits of the motion or objection in question.[5]  As Petitioner has failed to show a valid, meritorious basis for any of these motions or objections, and instead provides no more than conclusory allegations as to the prejudice he may have suffered as a result of counsel's alleged ineffective assistance, each of these claims fails to set forth a valid basis for relief.  *Palmer*, 592 F.3d at 395; *Aldea*, 450 F. App'x at 152.

In his next two claims (numbers 42 and 43), Petitioner argues that counsel was ineffective in failing to perform a more in depth voir dire of potential jurors and in failing to argue that the Government's striking of a juror with "a strong Eastern European accent" from the jury constituted

---

[5] Specifically, the Court notes that Petitioner fails to show that the operative indictment was actually faulty, rather than just not to Petitioner's liking, *see Cvjeticanin*, 704 F. App'x at 91 ("[t]he allegations in this Superseding Indictment were sufficient"), Petitioner does not attempt to argue he would have entered a guilty plea to the operative superseding indictment had counsel requested a new arraignment following the Second Superseding Indictment which contained no new allegations and merely removed certainly previously indicted charges, Petitioner does not show he was prejudiced by Patel not being sequestered in light of the fact that Patel investigated this case and was intimately familiar with the facts even before trial, Petitioner makes no showing of any actual error in grand jury proceedings, Petitioner fails to set forth a valid basis for venue change, and Petitioner provides no valid factual basis for believing an informant other than Steve Weinberg, jury tampering, or a widespread illegal wiretap regime actually existed.

a *Batson* violation. As to the first argument, Petitioner utterly fails to show that he was prejudiced – although he *speculates* that a stronger voir dire or the use of more peremptory challenges on unspecified jurors *may* have resulted in a more favorable jury, nothing that Petitioner has submitted in any way shows that he was prejudiced by counsel's approach to jury selection as nothing indicates that the result at trial – during which strong evidence of Petitioner's guilt was presented – would have likely been different.

Turning to Petitioner's *Batson* related claim, the Government used only one peremptory challenge – on a juror who primarily spoke Polish[6] and reported having some problems speaking English. (*See* Docket No. 14-274 at ECF No. 123 at 73-77.) The Government initially raised a for cause challenge to this Juror, arguing that her stated difficulties in speaking and understanding English could hamper her ability to serve on the jury as the Government did not think she would be able to "keep up" with proceedings. (*Id.* at 75.) After this Court found that concern insufficient for a for cause challenge, the Government used a peremptory challenge. (*Id.* at 77.)

In order to show that a meritorious *Batson* challenge could have been raised, Petitioner would have to, at the very least, make a prima facie showing that the peremptory challenge was used in a discriminatory manner. *Lark v. Sec'y Pa. Dep't of Corr.*, 645 F.3d 596, 618 (3d Cir. 2011); *Bronshtein v. Horn*, 404 F.3d 700, 724-25 (3d Cir. 2005). Generally, a challenge based on a single struck juror will face a steep challenge in making this showing, especially where neither the prosecutor's questions nor the nature of the offense implicates any alleged discrimination. *Bronshtein*, 404 F.3d at 724-25. Here, nothing about the Government's strike suggests any discriminatory motive – although the juror in question was presumably Polish given her language

---

[6] Although the juror never expressly confirmed the fact, the Court presumes that this juror, who was a citizen of the United States by Naturalization, was from Poland. (*See* Docket No. 14-274 at ECF No. 123 at 73-75.)

background, the Government's expressed purpose with the strike was based on the Government's objection first raised as a for cause challenge – that she had difficulty speaking, and likely understanding, English, and would thus have difficulty following along at trial. Petitioner has thus utterly failed to make a prima facie showing of any discriminatory action in this single juror challenge, and therefore fails to even reach the first hurdle necessary to begin a *Batson* inquiry. *Id.* Counsel was therefore not ineffective in failing to raise a *Batson* objection to this challenge. *Aldea*, 450 F. App'x at 152.

Petitioner next argues (in claim 44) that counsel proved ineffective in failing to object to the submitted jury instructions, which he believes were insufficient as they largely followed the model jury charges and didn't specifically "advance" any defense theory. Petitioner makes no attempt to challenge the actual instructions as improper, nor does he show how the instructions in question actually prejudiced him. As Petitioner has failed to even attempt to show that he was prejudiced, this claim is without merit. *Palmer*, 592 F.3d at 395; *Aldea*, 450 F. App'x at 152.

In his next two claims (numbered 46 and 47), Petitioner argues that counsel were ineffective during opening and closing statements because part of counsel's opening drew an objection and because the closing argument, in Petitioner's view, did not adequately address alleged "perjuries, lies and mistakes" made by the Government and its witnesses. Having reviewed both the opening and closing arguments made by counsel, this Court finds that both statements reasonably argued Petitioner's case as well as could be expected given the strong evidence of Petitioner's guilt. While there was an objection to counsel's opening, that alone does not show that her opening statement was improper or faulty, and that counsel did not raise Petitioner's unsupported allegations of perjury, lying, or mistakes was in no way faulty – such bald accusations would certainly have drawn further objections. Ultimately, Petitioner makes little effort to show that he was in any way prejudiced by counsel's opening and closing arguments, nor does he present

what argument he believes should have been made in any detail, and Petitioner has thus failed to show that the outcome of trial would likely have been different with "better" argumentation. Petitioner has thus failed to show any prejudice, and these claims fail to set forth a valid basis for relief. *Palmer*, 592 F.3d at 395.

In his forty-eighth claim, Petitioner asserts that counsel committed "numerous pretrial and trial evidentiary" mistakes, none of which he identifies with specificity, instead saying that they are "so voluminous" that he will only provide them if the Court so requests. As Petitioner has not identified any *specific* evidentiary error which he seeks to challenge, he has utterly failed to plead any facts or make any argument as to the prejudice allegedly suffered, and this claim is therefore summarily denied. *Palmer*, 592 F.3d at 395.

In his final trial error claim (number 49), Petitioner contends that counsel proved ineffective in failing to "highlight" portions of the Government's recording in which he stated to his former employer that he would not break the law, did not argue that Petitioner's actions caused no harm to his clients, failed to note that his victims could have discovered his ownership of Flowerson through corporate records searches and failed to argue that the DOL forms were irrelevant to Petitioner's fraud. Although Petitioner believes these to be his most important trial error claims, each is without merit. Had counsel highlighted Petitioner's denial of breaking the law in the video, it would only have refocused the jury on the video in which Petitioner both admitted to portions of his fraudulent scheme and directly threatened his former firm and their two clients, which would have in no way made it *less* likely that he would have been convicted. Likewise, the issue with Flowerson was that no one had *reason* to know or attempt to discern the ownership of the company, that Petitioner had filed some documents with the state in creating the company or may have placed some publicly available ads through it previously was irrelevant to the issue at trial – Petitioner failed to disclose and otherwise obscured his ownership of Flowerson

from his employer and clients, promised to file specific advertisements in support of those clients

DOL forms (which were therefore *entirely* relevant to the charged fraud), took money for them,

and then utterly failed to file the specific promised advertisements. None of these arguments would

undercut those facts or the strong evidence of Petitioner's guilt – including the newspapers and

magazines on the appropriate days utterly devoid of the promised and billed advertisements and

Petitioner's own taped admissions – and Petitioner was therefore not prejudiced by counsel's

alleged failings. Petitioner's final trial error claim is therefore without merit.

In his fiftieth claim, Petitioner argues that counsel was ineffective in making her Rule 29

motion because he believes she failed to adequately show that the evidence presented by the

Government was insufficient to support his conviction. This argument, however, is woefully

mistaken. As recounted above, the evidence of Petitioner's guilt was very strong, and Petitioner

has presented no facts which would undercut that evidence. Petitioner's taped recording, the

testimony of the witnesses establishing the mailed bills and payments, and the periodicals utterly

devoid of promised advertisements clearly established Petitioner's guilt, and nothing Petitioner

now presents would have made counsel's Rule 29 motion any more successful. Petitioner was

therefore not prejudiced by this alleged failing, and Petitioner has shown no basis for habeas relief.

In his fifty-first through fifty-fourth claims, Petitioner contends that his counsel was

ineffective at sentencing because he believes counsel did not adequately oppose two sentencing

enhancements, did not adequately argue Petitioner's history as a basis for leniency under the

applicable sentencing factors, did not adequately oppose the Government's forfeiture arguments,

and did not adequately address the loss amount calculation with "new" evidence including credit

card receipts and the like which Petitioner believes would have affected the loss amount. Turning

first to the forfeiture issue, as this Court will explain in more detail below in relation to certain

appellate claims Petitioner raises, a § 2255 motion is not a proper mechanism for seeking relief

from a forfeiture order, and Petitioner's ineffective assistance claim (number 52) attacking counsel's alleged failures related to the forfeiture therefore provide no basis for relief in this matter. *See, e.g.*, *Durante v. United States*, No. 16-8949, 2020 WL 205895, at *10 (D.N.J. Jan. 13, 2020); *United States v. Trimble*, 12 F. Supp. 3d 742, 745-46 (E.D. Pa. 2014).

Turning next to Petitioner's loss calculation arguments, as the Third Circuit found on direct appeal, this Court's loss determination was sufficient and reasonable in light of the facts presented and the basis for that calculation was entirely proper.  *Cvjeticanin*, 704 F. App'x at 92-93. Although counsel's argument during sentencing for a very low loss amount premised solely on the invoices in the nine counts of the indictment was without merit, *id.*, the arguments Petitioner now provides – that 70,000 dollars of credit card receipts of dubious origin which are  not clearly relevant and the fact that he did place *some* advertisements during the time Flowerson was acting as an agent of his firm for that purpose – fare no better.  Nothing Petitioner has presented would have altered this Court's loss calculation sufficient to effect Petitioner's ultimate sentencing range. Petitioner has thus not shown that he was prejudiced by counsel's loss calculation arguments.

In his remaining sentencing arguments, Petitioner suggests counsel was ineffective in not presenting better arguments for downward variances or departures or for leniency based on the sentencing factors, and failed to properly oppose sentencing enhancements for abuse of trust and obstruction of justice by arguing that his sentence was not proportional to his crime.  As to his arguments regarding variances or departures, Petitioner provides no good argument for such a downward sentencing change other than his belief that his history[7] – an immigrant with several law degrees and a masters degree who worked in the legal field for decades, contra a "'junkie'

---

[7] Petitioner suggests that counsel should have argued that his clients were contributorily negligent to and profited from his offenses, that he should have gotten credit for home confinement, and that imprisonment was not necessary in his case, but each of these arguments is utterly without merit and would have been rejected as such.

with no personal characteristics or life achievements[,]" (*see* ECF No. 22 at 87), – warranted a lesser sentence.  To the contrary – that exact history is part of the reason Petitioner received an abuse of trust enhancement and should have known better than to defraud his clients as brazenly as he did.  Had counsel presented this sentencing factor argument, it would not have changed the outcome at sentencing.  Petitioner's argument that counsel failed to oppose the abuse of trust enhancement is likewise without merit – given Petitioner's position as an attorney and his obfuscation regarding Flowerson's ownership, that enhancement was entirely warranted and Petitioner's argument that his fraud should have been easily detectable is dubious at best.  Finally, Petitioner's proportionality argument would have had no effect on the outcome of his sentence – that certain other offenders may have received lower sentences for crimes quite dissimilar to Petitioner's own actions is irrelevant and would not have affected the outcome of Petitioner's sentence.  Petitioner has thus failed to show that he was prejudiced in relation to any of his sentencing claims,[8] and those claims are all therefore no basis for relief.

Petitioner next argues that counsel proved ineffective in failing to file a Rule 35 motion to correct sentence the Court's loss, restitution, and forfeiture determinations which he believes were mistakenly calculated.  As discussed above and below, the Court's loss determination was not mistaken or miscalculated and Petitioner has not shown otherwise, and Petitioner may not use this § 2255 matter to challenge his restitution or forfeiture orders.  *Durante*, 2020 WL 205895 at *10. Petitioner has therefore not shown prejudice as to his Rule 35 related claim.

In his penultimate series of claims (numbers 56 through 63), Petitioner asserts that his counsel proved ineffective on direct appeal in raising frivolous arguments, in failing to fully

---

[8] The Court further notes that as Petitioner completed his custodial sentence more than a year ago and none of his sentencing claims would in any way impact his term of supervised release, his sentencing claims are also likely moot as this Court is without the ability to provide any meaningful relief as there is no further custodial term to reduce.

challenge the Court's restitution and forfeiture orders on appeal, and in otherwise failing to adequately press Petitioner's appeal. While appellate counsel's decisions are subject to the same ineffective assistance standard applicable to trial counsel claims, *see Smith v. Robbins*, 528 U.S. 259, 285 (2000), "it is a well established principle that counsel decides which issues to pursue on appeal," *Sistrunk v. Vaughn*, 96 F.3d 666, 670 (3d Cir. 1996) (citing *Jones v. Barnes*, 463 U.S. 745, 751-52 (1983)), and appellate counsel need not raise every nonfrivolous claim a defendant wishes to pursue. *Jones v. Barnes*, 463 U.S. at 751. As the chief component of effective appellate advocacy is the winnowing out of weaker claims in favor of those with a greater chance of success, *id.* at 751-52; *Smith v. Murray*, 477 U.S. 527, 536 (1986), the Supreme Court has held that "[g]enerally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of [appellate] counsel be overcome." *See Robbins*, 528 U.S. at 288 (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)).

Before reaching the general issue of counsel's alleged ineffectiveness on appeal, the Court notes that in several of his appellate claims, Petitioner seeks relief related to two judgments not related to his imprisonment – this Court's restitution order and forfeiture order. "The plain and unambiguous language of § 2255 indicates that the statute only applies to '[a] prisoner in custody . . . claiming the right to be released.'" *Trimble*, 12 F. Supp. 3d at 745 (alterations in original) (quoting 28 U.S.C. § 2255(a)). Fines, fees, and forfeiture and restitution orders, however, are not sufficient restraints on the liberty of a criminal offender to constitute 'custody.' *Id.*; *see also Obado v. New Jersey*, 328 F.3d 716, 718 (3d Cir. 2003); *United States v. Ross*, 801 F.3d 374, 380-81 (3d Cir. 2015). As a forfeiture or restitution order does not qualify as "custody", and because § 2255 is available only to those seeking release from custody, relief under the statute is not available to those seeking to challenge forfeiture or restitution orders. *See Ridley v. Smith*, 179 F. App'x 109, 111 (3d Cir. 2006) (quoting *United States v. Kramer*, 195 F.3d 1129, 1130 (9th Cir. 1999)

(collecting cases)); *see also Kaminski v. United States*, 339 F.3d 84, 87-89 (2d Cir. 2003).  A claim

challenging such an order likewise does not become cognizable simply because it is included

within a habeas action which presents cognizable claims challenging an inmate's physical custody.

*Trimble*, 12 F. Supp. 3d at 745-46; *see also Kaminski*, 339 F.3d at 89.  That the claim challenging

the forfeiture or restitution order is presented as an ineffective assistance of counsel claims does

not change this result.  *Trimble*, 12 F. Supp. 3d at 746; *see also Shephard v. United States*, 735

F.3d 797, 798 (8th Cir. 2013); *Kaminski*, 339 F.3d at 85 n. 1; *United States v. Thiele*, 314 F.3d

399, 402 (9th Cir. 2002); *Smullen v. United States*, 94 F.3d 20, 26 (1st Cir. 1996); *United States v.

Segler*, 37 F.3d 1131, 1137 (5th Cir. 1994).; *but see Weinberger v. United States*, 268 F.3d 346,

351 n. 1 (6th Cir. 2001) (permitting a petitioner to challenge a restitution order under § 2255 based

on a meritorious ineffective assistance of counsel claim).  Because several of Petitioner's claims

relate solely either to failings related to his forfeiture and restitution orders (specifically claims

number 58 and 62), those claims provide no basis for relief in this habeas matter.[9]

Turning to Petitioner's remaining appellate arguments, Petitioner contends that counsel

should have raised claims based on his belief that this Court treated the advisory sentencing

guidelines as mandatory, that he believes "erroneous facts" were used to arrive at his loss amount,

that this Court did not adequately consider the § 3553(a) factors, and that he believes this Court

did not "adequately explain" the decision to deny his requests for downward departures or

variances.  None of these claims are in any way stronger than those raised by counsel on appeal.

This Court clearly understood and applied the guidelines in an advisory fashion, clearly considered

---

[9] Petitioner in any event seeks relief based on counsel's failure to file an amended notice of appeal as to the amended restitution order, an error which Petitioner admits did not harm him, as the Third Circuit still considered the argument in question, *Cvjeticanin*, 704 F. App'x at 93-94, and counsel's alleged failure to appeal the forfeiture order – something which Petitioner does not state he desired or requested that she do.  Petitioner has thus failed to show counsel was ineffective in any event as he has failed to show how he was prejudiced by the alleged failings.

the appropriate sentencing factors, and provided sufficient explanation for the denial of Petitioner's departure/variance requests. (*See* Gov't's App. at A889-92.) Likewise, as the Third Circuit explained, the "erroneous facts" (ECF No. 22 at 86-87), contained in the loss chart submitted by the Government "were undoubtedly part of the same scheme . . . charged as substantive Counts in the Superseding Indictment," and were thus relevant bases for a loss amount determination. *Cvjeticanin*, 704 F. App'x at 93. All of the claims Petitioner wishes had been raised are thus clearly without merit, and are certainly no stronger than those raised by counsel. Petitioner's claims of ineffective assistance of appellate counsel are therefore without merit. *Robbins*, 528 U.S. at 288.

Petitioner raises two final claims of ineffective assistance of counsel – a claim in which he asserts counsel failed him by not responding to a letter the Government submitted to the Third Circuit providing a citation to a new, relevant case, and a cumulative error argument. As to the first argument, Petitioner has utterly failed to show how a response by counsel to the Government's letter would have in any way altered the outcome of his appeal, and he has therefore failed to show prejudice on that basis. Finally, because all of his claims are without merit or are barred for the reasons discussed above, Petitioner has failed to show that he was actually prejudiced by counsel's alleged errors in the aggregate and he is not entitled to relief based on counsel's alleged cumulative errors. *See, e.g.*, *Albrecht v. Horn*, 485 F.3d 103, 139 (3d Cir. 2007) (cumulative error analysis merely aggregates claims together will only warrant relief where the claims together were not harmless and caused actual prejudice), *cert. denied*, 552 U.S. 1108 (2008). As all of Petitioner's claims are barred or without merit, Petitioner's amended motion to vacate sentence is denied.

### E.      Certificate Of Appealability

Pursuant to 28 U.S.C. § 2253(c), the petitioner in a § 2255 proceeding may not appeal from the final order in that proceeding unless he makes "a substantial showing of the denial of a constitutional right." "A petitioner satisfies this standard by demonstrating that jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Because all of Petitioner's claims are clearly barred or meritless for the reasons expressed throughout this opinion, Petitioner has failed to make a substantial showing of a denial of a constitutional right, and his amended motion is not adequate to receive encouragement to proceed further.  This Court therefore denies Petitioner a certificate of appealability.

## IV.    CONCLUSION

For the reasons set forth above, Petitioner's amended motion to vacate sentence (ECF No. 22) is **DENIED**, and Petitioner is **DENIED** a certificate of appealability.  An appropriate order follows.

MICHAEL A. SHIPP
UNITED STATES DISTRICT JUDGE